UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIE V. THERRIEN,                          Case No. 18-12966

        Plaintiff,                           Mark A. Goldsmith
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Stephanie Dawkins Davis
SECURITY,                                    United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.   PROCEDURAL HISTORY

A.   Proceedings in this Court

On September 21, 2018, plaintiff Tracie V. Therrien filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Mark A. Goldsmith referred this matter to the undersigned to review the

Commissioner's unfavorable decision denying Therrien's claim for disability

benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary

judgment.  (Dkt. 14, 16).  Therrien also filed a reply in support of her motion.

(Dkt. 17).

B.     Administrative Proceedings

On May 7, 2015, Therrien filed applications for supplemental security income and for disability insurance and period of disability benefits, alleging disability beginning on September 30, 2013.  (Tr. 10).[1]  The claim was initially disapproved by the Commissioner on August 8, 2015.  *Id.*  Therrien requested a hearing and on October 12, 2017, she appeared, via video teleconference, with counsel present, before Administrative Law Judge ("ALJ") Christopher J. Mattia, who considered the case *de novo*.  (Tr. 28-58).  In a decision dated December 29, 2017, the ALJ found that Therrien was not disabled.  (Tr. 7-23).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 29, 2018, denied Therrien's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** this matter for further proceedings under Sentence Four.

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Therrien was born in 1968 was 49 years old on the date of the hearing before the ALJ.  (Tr. 34).  Her date last insured was December 31, 2016.  (Tr. 31, 124).  She has past relevant work as a janitor, which is unskilled and medium exertion level.  (Tr. 21).  She also has work experience as an adult foster caregiver, housekeeper, and restaurant server.  (Tr. 21, 243, 246).  She stopped working on September 30, 2013 when she was hospitalized because of her schizoaffective disorder, psychosis, obsessive-compulsive disorder (OCD), post-traumatic stress disorder, and anxiety.  (Tr. 183).

The ALJ applied the five-step disability analysis and found at step one that Therrien had not engaged in substantial gainful activity since the amended alleged onset date.  (Tr. 12).  At step two, the ALJ found that Therrien's schizoaffective disorder, OCD, anxiety, and alcohol dependence in remission were "severe" within the meaning of the second sequential step.  (Tr. 13).  However, at step three, the ALJ found no evidence that her impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 14).  Thereafter, the ALJ assessed Therrien's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but
> with the following non-exertional limitations: the

3

> claimant is limited to understand, carry out, and
> remember simple instructions; make simple work-related
> decisions; occasionally interact with supervisors, co-
> workers and the public; occasionally deal with changes in
> a routine, work setting; and perform work that does not
> require a production line pace, where co-workers'
> productivity is dependent on the claimant's productivity.

(Tr. 15).  At step four, the ALJ found that Therrien was able to perform her past

relevant work as a janitor and therefore, denied benefits.  (Tr. 21).  In the

alternative, at step five, the ALJ found that there were jobs that exist in significant

numbers in the national economy that Therrien can perform and thus, she was not

disabled from December 16, 2013 through the date of the ALJ's decision.  (Tr. 21-

22)

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  *Id.*  "If the Commissioner makes a dispositive finding at any

point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

 If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

  C. <u>Analysis and Conclusions</u>

 Therrien argues that the ALJ improperly gave less than controlling weight to

the opinions of her long-time treating psychiatrist, Dr. Neal Fellows and failed to

conduct a proper analysis of the factors set forth in 20 C.F.R. § 404.1527(c).  Dr.

Fellows opined that Therrien was moderately limited in her ability to deal with

ordinary work stress and that she would suffer symptoms that would cause her to

be off-task 1-2 hours of each workday.  (Tr. 734).  Dr. Fellows also anticipated that

she would be absent from work more than three times per month.  *Id*.  Dr. Fellows

opined that Therrien was markedly limited in a number of areas:  the ability to

remember locations and work-like procedures; the ability to understand, remember,

and carry out detailed instructions; the ability to maintain attention and

concentration for extended periods; the ability to perform activities in a schedule,

maintain attendance, and be punctual; the ability to sustain an ordinary routine with

supervision, the ability to work in coordination with or in proximity to others

without being distracted by them; the ability to complete a normal workday

without interruptions from psychologically based symptoms and to perform at a

consistent pace without unreasonable rest periods; the ability to interact

appropriately with the general public; the ability to accept instructions and respond

appropriately to criticism from supervisors; the ability to get along with co-workers

or peers without distracting them or exhibiting behavioral extremes; the ability to

respond appropriately to the changes in the work setting; the ability to travel in

unfamiliar places or use public transportation; and the ability to set realistic goals

or make plans independently of others.  (Tr. 735-736).  Dr. Fellows identified a

number of signs and symptoms to support these limitations: poor memory,

emotional lability, delusions or hallucinations, substance dependence, recurrent

panic attacks, paranoia or inappropriate suspiciousness, feelings of

guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation, oddities

of thought, perception, speech or behavior, social withdrawal or isolation, illogical thinking or loosening of associations, obsessions or compulsions, persistent irrational fears, generalized persistent anxiety, and somatization or unexplained organic disturbances.  (Tr. 733).

The ALJ analyzed Dr. Fellows' opinions as follows:

> Although Dr. Fellows assessed a markedly limited ability to use public transportation or travel in unfamiliar places, this contrasts with the claimant's self-reports that she is capable of using public transportation and traveling without assistance (Exhibit 11 F). Based on this inconsistency and the lack of any markedly abnormal mental status findings in his own clinical notes, Dr. Fellows' opinion is not well corroborated. Thus, it is given little weight.

> Furthermore, the claimant presented to other treating medical sources with appropriate mood and affect on several occasions throughout the period at issue. In fact, the claimant acknowledged that her mood improved with medical management in June 2015 (Exhibits 6F, pp. 9, 11 & 13).

> Treating sources at her primary care office and ophthalmologist's office also noted that the claimant denied anxiety or depressive symptoms in June 2017 and presented with a normal mood and affect that month (Exhibits 12F, pp. 3-5 and 14F, pp 5-6).

(Tr. 18-19).

According to the Commissioner, the ALJ reasonably explained that his opinion was not well-corroborated by markedly abnormal mental status findings in his own clinical notes.  (Tr. 18).  Instead, according to the Commissioner, Dr.

Fellows consistently observed that Therrien objectively appeared cognitively intact.  (Tr. 17-18, 290, 351, 354, 355, 449, 698, 707, 728, 793, 795, 815).  When Dr. Fellows provided a more detailed mental status examination, he repeatedly observed that she was well dressed, well groomed, cooperative, had clear speech, and did not report active thoughts of harming herself or others.  (Tr. 17-18, 351, 460, 449, 698, 707, 728, 793, 795, 815).  He also observed at appointments that her long-term memory was "quite intact," and she had good future orientation, adequate energy level, and good insight and judgment.  (Tr. 17-18, 460, 728).  Accordingly, the Commissioner maintains that the ALJ reasonably found Dr. Fellows' notes showing Therrien retained objectively normal mental functioning despite her symptoms inconsistent with his opinion.  (Tr. 17-18).  The ALJ also explained that Therrien had presented to other medical sources with appropriate mood and affect.  (Tr. 18); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c).  An ALJ must provide good reasons as to why a treating

physician's opinions fail to meet either prong of this test.  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).  Neglecting to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart*, at 376-77.

  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight under the two-pronged test set forth above, the ALJ must determine, using the factors set forth in 20 C.F.R. § 404.1527(c) what weight will be given to the treating the treating physician opinion, the ALJ must give good reasons for the weight accorded to the opinion.  The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).

Before evaluating the ALJ's good reasons analysis using the factors set forth in 20 C.F.R. § 404.1527(c), the Court must first analyze whether the ALJ sufficiently explained why all of Dr. Fellows' opinions are unsupported by medically acceptable clinical and laboratory diagnostic techniques and whether he sufficiently explained how all Dr. Fellows' opinions were inconsistent with the other substantial evidence in the record.  That is, the Court must first assess whether the ALJ's two-pronged controlling weight analysis is supported by substantial evidence.  *Gayheart*, 710 F.3d at 376-377.  The Commissioner suggests that Therrien improperly asks the Court to reweigh the evidence.  However, in evaluating whether the ALJ sufficiently explained whether Dr. Fellows' opinions are unsupported by medically acceptable clinical and laboratory diagnostic techniques and whether they are inconsistent with other substantial evidence in the record, the undersigned must review those records in some detail.   The review is necessary in order to ensure that the ALJ properly applied the treating physician rule, to assess whether his analysis permits meaningful review of the application of that rule, and to make certain the application of the rule does not focus on isolated pieces of record evidence to support the analysis.  *See Gayheart*, 710 F.3d at 376, 378.

Two principles are important in analyzing a psychiatric treating physician opinion that distinguish the analysis from one based on physical impairments.

14

First, one must understand what qualifies as "medically acceptable clinical and laboratory diagnostic techniques," or what is commonly referred to as objective medical evidence in this context. In the psychiatric context, objective medical evidence consists of laboratory findings and medical signs, 20 C.F.R. § 416.912(b), which are defined under 20 C.F.R. § 416.928(b) as "psychological abnormalities which can be observed, apart from your statements (symptoms)" and which "must be shown by medically acceptable clinical diagnostic techniques." *Parr v. Colvin*, 2014 WL 301043, at *6, n.1 (S.D. Ohio Jan. 28, 2014) (Report and Recommendation), adopted sub nom. *Parr v. Comm'r of Soc. Sec.*, 2014 WL 656774 (S.D. Ohio Feb. 19, 2014). "[S]igns are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception," which must "be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 416.928(b); *Parr*, 2014 WL 301043, at *6, n.1. "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology," whose findings should not be rejected simply because of the "relative imprecision of the psychiatric methodology." *Parr*, 2014 WL 301043, at *6. Thus, in *Parr*, the court found that treatment notes which included clinical findings such as "labile mood, mood swings, panicked mood, psychomotor

retardation, decreased appetite, poor sleep, poor concentration, tearful, anxiety,

[and] agoraphobia," and which showed that the plaintiff's medications were often

changed to make them more effective provided ample objective evidence and

clinical findings of the plaintiff's mental impairments.  *Id*. (citing *Blankenship v.*

*Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

The second important principle to consider when evaluating a psychiatric

treating physician opinion is that Social Security regulations recognize that a

claimant's level of functioning may vary considerably over time and that

longitudinal evidence is required in the case of mental impairments.  *Fithen v.*

*Comm'r of Soc. Sec*., 2016 WL 1381822, *8 (S.D. Ohio Apr. 6, 2016) (citing 20

C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2)).  As observed in *Fithen*,

"improvement" in the level of mental functioning is a relative concept and is

dependent on the base level from where the improvement is measured."  *Id*.  The

Sixth Circuit has held that "better" does not mean no longer impaired:

> Even if [a doctor's] use of the word "better" referred to
> Plaintiff's mood, this word did not provide the ALJ with
> substantial evidence from which to find that Plaintiff's
> mental impairment had subsided. The ALJ made no
> inquiry into the degree of improvement, or from what
> baseline Plaintiff had improved. Under the ALJ's logic,
> any improvement in one's mood, regardless of how small
> and from what level the individual improved, would
> defeat a claim of mental impairment.  This cannot be so.

*Boulis-Gasche v. Comm'r of Soc. Sec*, 451 Fed. Appx. 488, 494 (6th Cir. 2011);

*see also Winn v. Comm'r of Soc. Sec*., 615 Fed. Appx. 315, 322-23 (6th Cir. 2015)

("these notes [noting improvement] in no way contradict Dr. Wee's general

assessment of Winn's mental health.  The notes indicate progress and improvement

from some previous baseline; they are not inconsistent with the conclusion that

Winn's overall condition was such that she suffered from severe mental

impairment."); *McQueen v. Comm'r of Soc. Sec*., 2014 WL 533496, *9 (S.D. Ohio

Feb. 11, 2014) ("There is no evidentiary basis for determining that plaintiff's

depression and anxiety had 'improved' such that Dr. Colmenares' findings were no

longer apt.  Rather, review of the record demonstrates that plaintiff's mental

impairments continued to fluctuate and manifest in significant symptomology.").

    With these principles in mind, the Court undertakes a review of the

sufficiency of the ALJ's analysis of whether Dr. Fellows' opinions are entitled to

controlling weight.  However, the ALJ does not expressly assess Dr. Fellows'

opinions under the controlling weight standard.  This standard is not even

mentioned in his opinion.  The present circumstances are reminiscent of those in

*Gayheart*, where, while the ALJ mentioned the controlling weight standard, the

Sixth Circuit found reversible error because the ALJ's analysis focused solely on

the § 404.1527(c) factors, which are only to be applied *after* a determination

(supported by good reasons) that the treating physician opinion is not entitled to controlling weight. *Id*. at 376-77.

Here, the ALJ provides some reasons for the weight given to Dr. Fellows' opinions but does not explain how those reasons relate to either of the prongs of the controlling weight test. *See Gayheart*, at 376 (The analysis of some of the factors set forth in § 404.1527(c) "does not explain to which aspects of the controlling weight test this critique is relevant."). As in *Gayheart*, a meaningful review of whether the ALJ properly applied the treating physician rule is hindered by the ALJ's failure to provide good reasons for not giving Dr. Fellows' opinions controlling weight. Moreover, the stated reasons, which like *Gayheart*, touch on some of the § 404.1527(c) factors, are not well-grounded in the record evidence. The ALJ's first reason for the weight assigned was his conclusion that Dr. Fellows' findings of marked limitations were not supported by his treatment records and notes. The ALJ found that Dr. Fellows' clinical notes lacked any "markedly abnormal mental status findings" and the doctor's opinion that Therrien was markedly limited in her ability to use public transportation or travel to unfamiliar places was inconsistent with Therrien's statement two years earlier that she used public transportation. Plaintiff's argument that Fellows' opinion is not, in fact, inconsistent with Therrien's earlier statement given the qualifications associated with the later statement is not without appeal. But, even if Dr. Fellows' opinion

about public transportation and travel is inconsistent with Therrien's own statements, the ALJ does not explain how this undermines the multiple other opinions posited by Dr. Fellows or how it relates to the controlling weight assessment. And, given the number and frequency of abnormal findings in Dr. Fellows treatment notes, which are fully supported by the therapy and case management notes over a four-year period, the ALJ's summary conclusion that none of Dr. Fellows' opinions were consistent with his treatment notes is hard to square with the substantial evidence in the record.

More specifically, Therrien has been in a highly supportive case management program for her mental impairments involving treatment with Dr. Fellows; she has received multiple psychiatric medications, which have been ever increasing and changing over the years of treatment; regular therapy; and consistent help from case workers to help Therrien manage many of the areas of her life in which Dr. Fellows found her to be markedly or moderately impaired. While Therrien was clearly at her worst during her 2013 hospitalization when she was suicidal, depressed, delusional, and experiencing auditory hallucinations (Tr. 184), many of the symptoms she experienced then persisted and fluctuated up through the time of her hearing date to varying degrees, as illustrated by the timeline below.

- **January 8, 2015 therapy note**: noticeable short-term memory struggles, some tics, notable groaning.  (Tr. 448).

- **September 2, 2015 Mental status examination with Dr. Fellows**: no significant psychosis, good future orientation, no thoughts of self-harm. Short-term memory issues.  Medications continued and encouraged patient to continue with same level of case management.  (Tr. 460-461).

- **September 20, 2015 therapy note**: Therrien has not been making appointments but has been waiting until evening to do her "word searching" which helps her keep appointments and get more done.  (Tr. 457).

- **October 27, 2015 therapy note**: Symptoms of moderated OCD behaviors cause some disruption of daily living, no auditory hallucinations.  (Tr. 453).

- **December 2, 2015 mental status examination with Dr. Fellows**: Obsessions seem reasonably managed, no delusions or thoughts of self-harm.  Medications and therapy continued.  (Tr. 449-450).

- **January 20, 2016 therapy note**: Therrien was still biting her tongue to some degree, but it was better.  She had progress meeting goals and tried to complete tasks, but still had moderate compulsions.  (Tr. 445).

- **February 10, 2016 therapy note**: Some rumination and mild compulsions, slight groaning, which is a compulsion, and sad affect.  (Tr. 732).

- **February 24, 2016 therapy note**: Therrien reports ruminations and compulsions are baseline.  Depressed mood and hopelessness.  Baseline thought disturbances.  (Tr. 731).

- **February 24, 2016 mental status examination with Dr. Fellows**: No psychosis or delusions, good insight/judgment, no thoughts of self-harm. Encouraged Therrien to continue with therapy.  Adding new medication for anxiety.  (Tr. 729-729).

- **June 22, 2016 mental status examination with Dr. Fellows**:  No severe psychosis, DISCUS of $2^2$, racing thoughts with anxiety, focused on dermatillomania (chronic skin-picking related to OCD), no thoughts of self-harm.  Therrien was experiencing episodic panic attacks and repetitive thoughts leading to skin picking.  Encouraged Therrien to continue therapy and increased one of her medications.  (Tr. 707-708).

- **September 21, 2016 mental status examination with Dr. Fellows**:  Auditory hallucinations involving music, no thoughts of self-harm, but has been picking skin.  Dr. Fellows increased Therrien's medications and encouraged same level of case management.  (Tr. 698).

- **December 21, 2016 mental status examination with Dr. Fellows**:  Cooperative, clear speech, no delusions or hallucinations, no thoughts of self-harm, cognitive function intact.  Continue with medications and same level of case management.  (Tr. 793-794).

- **April 26, 2017 mental status examination with Dr. Fellows**:  Therrien has increased anxiety, skin picking, difficulty organization thoughts, but no thoughts of self-harm.  Medication increased.  (Tr. 795-796).

- **April 19, 2017 case management note**:  Anxiety is worse, picking skin frequently.  (Tr. 780).

- **May 19, 2017 case management note**:  Therrien reported feeling down and while her medications were increased, she could not keep her hands off her face.  Hard time waking up.  (Tr. 781).

- **August 26, 2017 mental status examination with Dr. Fellows**:  DISCUS of 1 (abnormal movements are difficult to detect or are easy to detect but

---

[2] DISCUS stands for "Dyskinesia Identification System: Condensed User Scale" https://hrsonline.com/wp-content/themes/healthrisk/article/DISCUS.pdf.  A DISCUS of 2 is "mild" and means "abnormal movements occur infrequently and are easy to detect."  *Id*.

only occur only once or twice in a short nonrepetitive manner), cooperative, clear speech, not talking about somatic issues, no thoughts of self-harm, continue with same level of case management.  Medications continued but can take additional anti-anxiety medication if needed.  (Tr. 815-816).

The foregoing treatment notes illustrate the waxing and waning of Therrien's psychiatric symptoms, as contemplated by 12.00(D)(2).  At times, her symptoms appeared to abate, only to return at varying levels.  Notably, her medications were routinely increased and changed by Dr. Fellows throughout this time-frame, which is supportive of Dr. Fellows' opinions and does not suggest that she reached a level of improvement that undermines his conclusions.  Moreover, Dr. Fellows continued to recommend a high-level case management for Therrien throughout his treatment of her, an opinion not addressed by the ALJ.  Thus, as in *Parr*, the consistent clinical signs – short-term memory struggles, obsessive behaviors and thoughts, anxiety and panic attacks, disorganized thoughts and thought disturbances – combined with the continual increasing and changing of medications and need for a high-level of case management – are consistent with Dr. Fellows' opinions.  Also, like *Parr* and *Smith*, the record documents persistent symptoms and abnormal findings.  "As such, the mental health records appear to support each of the treating psychiatrist's assessments."  *Smith v. Comm'r of Soc. Sec.*, 2018 WL 705388, at *14 (S.D. Ohio Feb. 5, 2018), report and recommendation adopted, 2018 WL 1322232 (S.D. Ohio Mar. 13, 2018).  While it

is fair to say Therrien experienced improvements over the course of her treatment, the records throughout the period in question continue to reflect significant abnormal findings and Therrien's consistent serious struggles with her conditions.

Throughout this time frame, as suggested above, Therrien required assistance with paying bills, reinstating her Medicaid after multiple terminations, obtaining medications, and managing tasks like completing rental applications, banking, and paying court fines.  (Tr. 389, 444, 701, 714, 717, 722, 779).  She continually struggled with paying bills and making decisions, which resulted in her being at a homeless shelter.  (Tr. 717).  While her attendance improved in 2016 and 2017, she also regularly missed appointments or required help making sure she made her appointments.  (Tr. 457, 719, 723, 724, 781, 786, 794).  When assessing Dr. Fellows' opinion for consistency with his treatment records, the records from Therrien's therapist and case manager are part of those records to be evaluated. *See e.g.*, *Dudley v. Astrue*, 2011 WL 251106, *5 (N.D. Ohio Jan. 26, 2011) (ALJ failed to make clear how treating physician opinion was inconsistent with the other mental health professionals' notes and assessments, including those of the mental health case manager.); *Back v. Comm'r of Soc. Sec.*, 2014 WL 360047, *12 n. 9 (S.D. Ohio Feb. 3, 2014) (Evidence from therapist must be reconsidered with conjunction with treating physician opinion because they were "part of the same treatment team at Transitional Living."); *Smith v. Comm'r of Soc. Sec.*, 2018 WL

705388 (S.D. Ohio Feb. 5, 2018); *Price v. Comm'r of Soc. Sec.*, 2014 WL

7272206, at \*7 (S.D. Ohio Dec. 18, 2014) (The ALJ's failure to consider progress

notes prepared by the licensed social worker over a more than 18-month period in

weighing treating psychiatrist's medical opinion was not harmless given that the

social worker and psychiatrist were "part of the same practice and provided

counseling and psychiatric care to plaintiff as part of a 'continuum of care.'")

(citing *Guyaux v. Comm'r of Soc. Sec.*, 2014 WL 4197353, at \*16 (E.D. Mich.

Aug. 22, 2014).  Here, the notes from the therapist and case managers document

significant impairments that are supportive of Dr. Fellows' opinions.

The ALJ also relied on "normal" mental status examinations from Therrien's

ophthalmologist and her family practice physician, along with a few notes that her

mood improved with medication.  Again, the ALJ does not explain how this reason

relates to either of the prongs of the controlling weight test.  *See Gayheart*, at 376

(The analysis of some of the factors set forth in § 404.1527(c) "does not explain to

which aspects of the controlling weight test this critique is relevant.").  Moreover,

the opinions of physicians who only treat or assess physical impairments should

not typically be used to undermine the credibility of a claimant's psychological

limitations or to suggest that the claimed impairments are inconsistent with the

"*psychological* medical evidence of record."  *Winning v. Comm'r of Soc. Sec.*, 661

F.Supp.2d 807, 825 (N.D. Ohio 2009) (emphasis in original).  Similarly, given Dr.

Fellows' long-term treatment of Therrien, his expertise in mental health, and the long-term persistent abnormal findings in his records, two "normal" mental status examinations by non-mental health professionals do not undermine his assessments to any significant degree.  As discussed in detail above, reports of "improvement" made to other medical professionals do not contradict Dr. Fellows' records or opinions.  *See Boulis-Gasche*, 451 Fed. Appx. at 494; *Winn*, 615 Fed. Appx. at 322-23; *McQueen*, 2014 WL 533496, *9.

Based on the foregoing analysis, the undersigned concludes that the ALJ's failure to expressly analyze Dr. Fellows' opinions under the two-prong controlling weight standard is error requiring remand.  And, while many of Dr. Fellows' opinions appear to be both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in [the] case record," as discussed in detail above, this is an assessment to be made by the ALJ in the first instance, and not by the Court.  This is particularly important because much of the ALJ's analysis and the Commissioner's arguments are focused on Therrien's "improvements" without consideration of a baseline level of functioning or the waxing and waning of her condition, topics on which Dr. Fellows is most knowledgeable.  Accordingly, the undersigned concludes that the ALJ's analysis does not sufficiently explain how Dr. Fellows' opinions are unsupported by medically acceptable clinical and laboratory diagnostic techniques

nor does he sufficiently explain how all of his opinions are inconsistent with the substantial record evidence.

As set forth above, the Commissioner, though not labeled as such, made a detailed argument under the *Coldiron* line of cases, which stand for the proposition that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," where the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion, any such error is harmless. *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440-441 (6th Cir. 2010); *see* Dkt. 16, pp. 15-21. As explained in detail above, the undersigned concludes that the ALJ did not sufficiently explain why all of Dr. Fellows' opinions are unsupported by medically acceptable clinical and laboratory diagnostic techniques and did not explain sufficiently explain how all his opinions were inconsistent with the other substantial evidence in the record. That is, the ALJ neither undertook, nor provided any support for, the required controlling weight analysis. The undersigned is not persuaded by the Commissioner's argument that the remainder of the ALJ's opinion sufficient indirectly attacked the supportability and consistency of Dr. Fellows' opinion such that the error was harmless, given the lack of contrary medical opinions[3] and record evidence. *Congrove v. Comm'r of*

---

[3] In the Sixth Circuit, "[p]rovided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of*

*Soc. Sec.*, 2016 WL 3097153, at *6 (S.D. Ohio June 3, 2016), report and

recommendation adopted, 2016 WL 3944485 (S.D. Ohio July 15, 2016) ("[I]n the

rare cases where harmless error in this context is found, the ALJ cites to competing

physician opinions and relies on objective medical evidence as a basis for the

weight given to the treating physician's opinion."); *Nelson v. Comm'r of Soc. Sec.*,

195 Fed. Appx. 462, 470-471 (6th Cir. 2006) (finding harmless error where ALJ's

discussion made it clear that treating sources' opinions were not consistent with

other evidence as whole, including opinions of other doctors); *Coldiron v. Comm'r

of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (finding harmless error

where the ALJ discussed other record evidence, including other doctors' opinions);

*Hickney-Haynes v. Barnhart*, 116 Fed. Appx. 718, 725 (6th Cir. 2004) (finding

harmless error where the ALJ found the opinions conflicted with another treating

physician's opinion and record evidence).  The danger of the Commissioner's

argument in this case is like that rejected in *Gayheart*: the examples and evidence

selected by the ALJ to support the treating physician analysis are taken out of

context, offset by other evidence in the record, and focus on isolated pieces of

evidence, instead of the longitudinal picture of Therrien's functioning.  *Id*. at 377-

---

*Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  Here, the only other medical opinion in the record, provided by a state agency reviewing psychologist, was given only partial weight because he did not have access to the whole record, which evidence episodes of mild disorganization, ritualistic tendencies, and ruminating thoughts, which were not entirely resolved with treatment.  (Tr. 19).  Thus, the ALJ's analysis does not rely on any opinion that contradicts Dr. Fellows' opinion.

378.  Again, in assessing whether the ALJ satisfied the two-prong controlling weight test, a thorough review of Dr. Fellows' long-term treatment to determine if the reasons identified by the ALJ for the weight given to Dr. Fellows' opinions withstand scrutiny leads the undersigned to conclude that they do not; and the failure to expressly address the controlling weight test is not harmless.

The Court need not reach the issue of whether the ALJ provided a proper good reasons analysis under the 20 C.F.R. § 404.1527(c) factors because the undersigned finds reversible error under the two-prong controlling weight test.  As such, this matter must be remanded for further consideration of Dr. Fellows' opinions under the controlling weight test set forth in *Gayheart*.  Given the foregoing conclusions, the other points of error raised by Therrien need not be addressed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** plaintiff's motion for summary judgment, **DENY** defendant's motion for summary judgment, **REVERSE** the findings of the Commissioner, and **REMAND** this matter for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 28, 2019                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge